**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Case No. 07-cv-02598-WJM-BNB

RONNIE WATKINS, surviving spouse,
MADELINE WATKINS,
LANDON WATKINS, and
MICHAELA WATKINS, surviving minor children,
by and through their father Ronnie Watkins,

      Plaintiffs,

v.

ACTION CARE AMBULANCE, INC., a Colorado corporation,

      Defendant.

---

## ORDER ON PLAINTIFFS' RULE 702 MOTION

---

THIS MATTER comes before the Court on Plaintiffs' Rule 702 Motion ("702 Motion"), ECF No. 231, filed on July 11, 2011.  For the foregoing reasons, the 702 Motion is GRANTED in part and DENIED in part.

### BACKGROUND

This is a wrongful death case against Action Care Ambulance Company ("Defendant" or "Action Care") arising out of the death of Mellissa Watkins ("Mrs. Watkins" or "Decedent"), wife and mother of Plaintiffs Ronnie Watkins ("Mr. Watkins"), Madeline Watkins, Landon Watkins, and Michaela Watkins.  Mrs. Watkins was killed after falling out of the back of Defendant's ambulance while being transported to a mental health hospital on July 8, 2007.  At the time, Mrs. Watkins was on an involuntary 72-hour mental health hold after attempting suicide the day before.

Mrs. Watkins had been an inpatient at Highlands Behavioral Health System

("Highlands"), a mental health hospital, from June 20-29, 2007, and an outpatient from July 1-6, 2007.  On June 20, 2007, Mrs. Watkins told a staffer that she had wanted to jump out of the car on the way there.  (Foster Dep., ECF No. 184-9 at 68:22-24.)  This information was not provided to Defendant prior to transporting her from Parker Adventist Hospital ("Parker Adventist") on July 8, 2007.  (ECF No. 238 at 2.)  Defendants allege that they had limited information regarding Mrs. Watkins' history of depression and suicide attempts.  (*Id.* at 3.)  Further, there were no orders for restraints to be used on Mrs. Watkins during the transport.  (*Id.*)

Plaintiffs claim that Defendant's ambulance attendants were negligent in failing to adequately supervise Mrs. Watkins, resulting in her death.

On April 10, 2009, Defendant filed its required expert witness disclosures, notifying Plaintiffs of Defendant's intent to proffer the expert testimony Dr. Frederick Miller ("Dr. Miller"), Dr. Michael Jobin ("Dr. Jobin"), Dr. Eugene Eby ("Dr. Eby"), Dr. Peter Vellman ("Dr. Vellman"), and Nancy Lynch, R.N ("Nurse Lynch").  Plaintiffs argue that the Court should restrict the expert testimony of these individuals based on their education and training, the foundation of their opinion, and the relevance of the opinions to the claims at issue.  The 702 Motion is fully briefed and an evidentiary hearing on the Motion was held on September 7, 2011 (the "702 Motion Hearing).

## STANDARD FOR EXPERT TESTIMONY

### *Admissibility Under Rule 702*

"The admissibility of evidence in diversity cases in federal court is generally governed by federal law." *Blanke v. Alexander*, 152 F.3d 1224, 1231 (10th Cir. 1998). *See also Hanna v. Plumer*, 380 U.S. 460, 465 (1965) ("[F]ederal courts are to apply

state substantive law and federal procedural law."); *cf. Mut. Life Ins. Co. of N.Y. v. Bohlman*, 328 F.2d 289, 293-94 (10th Cir. 1964) ("It seems to be well settled that questions concerning the admissibility of evidence in a diversity case are procedural matters to be governed by application of federal law and not substantive matters which are governed by state law.").

The admission of expert testimony is governed by Rule 702 of the Federal Rules of Evidence.  Rule 702 states, in pertinent part:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  As the rule makes clear, while required, it is not sufficient that an expert be qualified based upon knowledge, skill, experience, training, or education to give opinions in a particular subject area.  Rather, the Court must "perform[ ] a two-step analysis."  *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). After "determin[ing] whether the expert is qualified by 'knowledge, skill, experience, training, or education' to render an opinion," *id.* (quoting Fed. R. Evid. 702), the specific proffered opinions must be assessed for reliability.  *See id.*; *see also* Fed. R. Evid. 702 (requiring that the testimony be "based upon sufficient facts or data," be the "product of reliable principles and methods," and reflect a reliable application of "the principles and methods . . . to the facts of the case").

Rule 702 "imposes on the district court a gatekeeper function to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'"

*United States v. Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)).  During the gatekeeping process, the Court undertakes two analytical steps.  First, it determines whether a witness is qualified to provide the expert testimony at issue.  Specifically, under Rule 702, an expert must possess expertise based on "knowledge, skill, experience, training or education."  *See United States v. Crabbe*, 556 F. Supp. 2d 1217, 1221 (D. Colo. 2008).

Second, the court must focus on the proffered expert testimony itself to determine if it is reliable.  *Id.*  The testimony must be based on "scientific, technical, or other specialized knowledge," and must be of a kind that will assist the trier of fact in understanding the evidence.  Fed. R. Evid. 702.  The Court must "assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts."  *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (citing *Daubert*, 509 U.S. at 592-93).  When assessing reliability, "the court may consider several nondispositive factors: (1) whether the proffered theory can [be] and has been tested; (2) whether the theory has been subject to peer review; (3) the known or potential rate of error; and (4) the general acceptance of a methodology in the relevant scientific community."  *103 Investors I*, 470 F.3d at 990 (citing *Daubert*, 509 U.S. at 593-94).  These considerations are not exhaustive.  Rather, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  Ultimately, the test requires that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of any expert in the relevant field."  Id.

-4-

Further, the court must determine whether the proffered expert testimony is relevant in that it will assist the trier of fact.  The question of relevance is essentially "whether [the] reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 593; *see also General Elec. Co. v. Joiner*, 522 U.S. 136, 151-52 (1997).  Even if deemed relevant, however, expert evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence" under Rule 403 of the Federal Rules of Evidence.  *See e.g. C.A. Assocs. v. Dow Chemical Co.*, 918 F.2d 1485, 1489 (10th Cir. 1990).

### Burden of Establishing Admissibility

While the proponent of the challenged testimony has the burden of establishing admissibility, its proffer is tested against the standard of reliability, not correctness; a proponent need only prove that "the witness has sufficient expertise to choose and apply a methodology, that the methodology applied was reliable, that sufficient facts and data as required by the methodology were used and that the methodology was otherwise reliably applied."  *Crabbe*, 556 F. Supp. 2d at 1221 (citing *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999)).

The proponent of the opinion need not prove that the expert is indisputably correct.  *See Mitchell,* 165 F.3d at 781.  However, the proponent must show that the method employed by the expert in reaching the conclusion is sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements.  *See id.*  A court's focus generally should not be upon the precise conclusions reached by the

expert, but upon the expert's qualifications, information relied upon and the methodology employed in reaching those conclusions. *See Daubert,* 509 U.S. at 595; *see also Dodge*, 328 F.3d at 1222.

***Standard of Care***

In a negligence action against a licensed professional in the State of Colorado, the professional "is generally entitled to be judged according to the tenets of the school of practice which the practitioner professes to follow." *United Blood Servs. v. Quintana*, 827 P.2d 509, 520 (Colo. 1992). Because the applicable standard of care in most professional negligence cases is not within the common knowledge and experience of members of the jury, the applicable standard of care must be established by expert testimony. *Id.* "Without expert opinion testimony in such cases, the trier of fact would be left with no standard at all against which to evaluate the defendant's conduct." *Id.* (citation omitted). Colorado courts provide that the applicable standard may be established by

> the opinion testimony of a qualified expert practicing in the same school or by the opinion testimony of an expert practicing in another school if the expert is sufficiently familiar with the standard of care applicable to the school in question as to render the witness's testimony as well-informed on the applicable standard of care as would be the opinion of an expert witness practicing the same profession . . . or if the standard of care at issue is substantially identical to both schools of practice.

*Id.* at 521.

## I.      FEDERAL RULE OF CIVIL PROCEDURE 26(a)(2)(C)

In their 702 Motion Plaintiffs object to the fact that Defendant did not provide the requisite disclosures for non-retained experts Dr. Vellman, Dr. Eby, and Nurse Lynch pursuant to Fed. R. Civ. P. 26(a)(2)(C). Rule 26(a)(2)(C) provides:

(C)  Witnesses Who Do Not Provide a Written Report.  Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state: (I) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify.

Fed. R. Civ. P. 26(a)(2)(C).  In its April 28, 2010 order adopting the amendment to the Federal Rules, the United States Supreme Court ordered that the changes "shall take effect on December 1, 2010, and shall govern all proceedings thereafter commenced, and insofar as just and practicable, all proceedings then pending."  *See U.S. v. Sierra Pacific Indus.*, No. CIV S-09-2445 KJM EFB, 2011 WL 2119078, at *2 (E.D. Cal. May 26, 2011).  Prior to implementation, only experts retained or specifically employed to provide expert testimony were required to provide a written report prior to their testimony.

Defendant disclosed Dr. Vellman, Dr. Eby, and Nurse Lynch on April 10, 2009, well before implementation of the new Rule.  (ECF No. 238 at 10.)  Defendant has not provided Plaintiffs with disclosures pursuant to the newly-enacted Rule 26(a)(2)(C).

Here, Plaintiffs failed to raise this issue until the eve of trial.  The Court finds that Plaintiffs have waived any argument that Defendant's non-retained experts should have made disclosures under Rule 26(a)(2)(c).  To enforce the amended Rule 26 now would cause undue prejudice to Defendant.  Therefore, the Court will apply the pre-December 1, 2010 version of Rule 26 to the proffered expert witnesses.

## II.    EXPERT OPINIONS AT ISSUE

### A.    *Frederick M. Miller, M.D.*

Plaintiffs' 702 Motion challenges Dr. Miller's qualifications to testify regarding the standard of care of an EMT, paramedic, emergency room physician and non-physician staff members at Highlands.  Specifically, Plaintiffs request the Court exclude Dr. Miller's testimony or opinions about events surrounding the ambulance transport, including any commentary on Mrs. Watkins treatment in the ambulance and at Parker Adventist.  (ECF No. 231 at 6.)  Plaintiffs argue that Dr. Miller is not an emergency room physician, is not involved in evaluating patients in the emergency room setting, is not an expert regarding the conduct or standard of care of an EMT or paramedic, nor is he involved in the transport of psychiatric patients from one facility to another.  (ECF No. 231 at 4-5.)  Further, Plaintiffs argue the issue in this case is the transport of Mrs. Watkins, not the care she received by Highlands or at Parker Adventist.  (*Id.*)

Dr. Miller is a psychiatrist who has been trained in emergency medicine and has treated psychiatric patients for years.  (ECF No. 238 at 4.)  He has worked alongside professionals in formulating diagnosis and providing treatment.  (*Id.*)  Dr. Miller has experience working in the emergency room, and is currently called for assistance in emergency situations to make decisions regarding the care and treatment of psychiatric patients, including making decisions regarding the feasability of transferring psychiatric patients by ambulance.  (ECF No. 238 at 7; Miller Dep., ECF No. 238-1 at 27:3-24.)  Dr. Miller works with social workers in determining the best course of treatment, and has provided training to social workers on the process of evaluating mentally ill patients.  (*Id.*)

Defendant argues that due to the necessary interaction of healthcare providers to effectuate the total care and treatment of patients, a physician must be knowledgeable

about the standards of care in those other areas of expertise.  (*Id.*)  Defendant maintains

that Dr. Miller is well qualified to form opinions as to the standard of care provided by

emergency room physicians, social workers, and paramedics.

Defendant states that Dr. Miller's testimony will assist the jury in understanding

Mrs. Watkins' history of prior treatment, which Defendant states is relevant to the case.

(*Id.* at 5.)  Defendant claims it is essential that the jury be provided with Mrs. Watkins'

entire history of depression and suicidal attempts so that they can appreciate the severity

of her illness and the degree of her determination to end her life.  (*Id.* at 6.)

Plaintiffs argue that Dr. Miller admits that he is not an expert in the field of

paramedics nor in ambulance services.  (ECF No. 231 at 5, Miller Dep., ECF No. 231-5

at 26:1-25, 27:1-17.)  However, it is the Court, not the parties or the witness himself, who

determines whether a witness is qualified to give expert testimony.  *Watson v. United

States*, 485 F.3d 1100, 1105 (10th Cir. 2007).

In light of the fact that Defendant did not present evidence at the 702 Motion

Hearing as to Dr. Miller's qualifications, the Court is unable to determine whether Dr.

Miller has the qualifications to provide expert testimony regarding the standard of care of

an EMT, a paramedic or for an ambulance transport.  It is Defendant's burden to prove

the foundational requirements of Rule 702 by a preponderance of the evidence, including

establishing the witness's qualifications to testify on certain subjects.  *See United States

v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).  The Court finds that Defendant failed

to meet its burden with regard to Dr. Miller's proffered testimony regarding the standard

of care of an EMT, a paramedic, or an ambulance transport.

Dr. Miller is a trained psychiatrist and will be able to provide expert opinion

testimony related to his field, and this is something Plaintiffs do not oppose.  However the Court here grants in part Plaintiffs' 702 Motion with regard to Dr. Miller's proffered testimony and hereby orders that Dr. Miller will not be permitted to provide expert testimony regarding the standard of care of an EMT, a paramedic, or an ambulance transport.  Further, Dr. Miller will be precluded from providing expert opinion testimony regarding the standard of care with regard to Mrs. Watkins' treatment at Highlands and Parker Adventist, as more fully detailed below.

> ### B.   Michael Jobin, M.D.

Plaintiffs' 702 Motion challenges Dr. Jobin's qualifications to testify regarding psychiatric medicine and Mrs. Watkins' employability.  Plaintiffs appear to be concerned about criticisms by Dr. Jobin of the treatment Mrs. Watkins received at Highlands, stating that Dr. Jobin is not trained to make such accusations.  (ECF No. 231 at 10-12. *See also* Jobin Dep., ECF No. 231-8 at 20:9-20.)  Plaintiffs further argue against admissibility of Dr. Jobin's disagreement with a Highlands' doctor's prognosis that Mrs. Watkins would return to the workforce, ECF No. 231 at 11, and Dr. Jobin's opinions about whether or not Mr. Watkins was aware of the June 20, 2007 statement by Mrs. Watkins about wanting to jump out of a car, *id.* at 12.  (*See* Jobin Report, ECF No. 231-4 at 2, 4.)

Dr. Jobin is an emergency room physician who has worked with psychiatric patients in various states of crisis.  (Jobin Dep., ECF No. 238-2 at 26:18-25, 27:1-3.)  Defendant argues that Dr. Jobin has worked alongside social workers and worked with psychiatric patients to such a degree that he is familiar with the standard of care in their fields.  (*Id.* at 24:2-10; 29:16-25, 30:1-6, 38:21-25, 39:1-3.)

Dr. Jobin is familiar with the process of gathering information from friends and

relatives, the patient, prior medical records and any prior care providers to develop a diagnosis and treatment plan.  (ECF No. 238 at 8.)  Defendant argues that Dr. Jobin's testimony will assist the jury in understanding the process required when assessing a patient in crisis by gathering information from various sources so that the appropriate method of transfer can be implemented.  (*Id.*)

Defendant addresses Mrs. Watkins' potential to re-enter the workforce through Dr. Jobin by stating that Dr. Jobin was sufficiently familiar with Mrs. Watkins' prior treatment records and could, based on his experience and education, form an opinion as to the likelihood of Mrs. Watkins returning to her prior profession as a nurse.  (*Id.* at 10.)

As with Dr. Miller, Defendant failed to produce Dr. Jobin at the evidentiary 702 Motion Hearing.  The Court finds as a consequence that Defendant failed to meet its burden of establishing that Dr. Jobin has the qualifications to provide expert opinion testimony regarding psychiatric medicine and Mrs. Watkins' employability.

Dr. Jobin is an emergency room physician and will be able to provide expert opinion testimony related to his field, and this again is something Plaintiffs do not oppose.  The Court hereby grants in part Plaintiffs' 702 Motion with regard to Dr. Jobin's testimony and hereby orders that Dr. Jobin will not be permitted to provide expert testimony regarding psychiatric medicine or Mrs. Watkins' employability.  Further, Dr. Jobin will be precluded from providing expert opinion testimony regarding the standard of care of Mrs. Watkins' treatment at Highlands and Parker Adventist, as more fully detailed below.

### C.    Dr. Peter Vellman

Plaintiffs' 702 Motion challenges the reliability of Dr. Vellman's testimony.

Plaintiffs argue that Dr. Vellman did not conduct a thorough investigation into Mrs. Watkins' death.  Plaintiffs ask the Court to find Dr. Vellman's testimony unreliable because he does not base his opinions on sufficient facts and data, but instead on a telephone call for which he does not remember the details of the conversation.  (ECF No. 231 at 13.)

Dr. Vellman is an emergency room physician and was the medical advisor for Defendant Action Care at the time of the incident at issue in this case.  Dr. Vellman has been endorsed to testify that based upon his investigation after the incident, given the information then available to Defendant's employees about the decedent, its employees met or exceeded the standard of care in regards to the transport of Mrs. Watkins on July 8, 2007.  Defendant states that Dr. Vellman will testify that based on observations made by the staff at Parker Adventist and the report provided by the staff to Defendants, the transfer procedure was within the standard of care.  (ECF No. 238 at 11.)  Defendant argues that Dr. Vellman has sufficient information to express opinions pertaining to the policies and procedures followed by paramedics in Colorado and will offer opinions pertaining to the standard of care performed by Action Care employees.  (ECF No. 238 at 1.)

During the 702 Motion Hearing, Dr. Vellman testified that after the incident he discussed the matter with Defendant's quality improvement lead as well as administrators at Action Care.  (Unofficial 702 Motion Hearing Tr. "702 Tr." at 14:24:58-14:25:10.)  He further testified that he has reviewed the trip report and incident reports created by Defendant's personnel in forming his opinion.  (*Id.* at 14:31:58-14:32:06.)  Dr. Vellman has developed transfer protocols and engages in efforts to train transfer

personnel in the community.  (Vellman Dep.; ECF No. 238-3 at p. 6-7:7-1; p. 22-23:22-25; p. 24:2-15; p. 29:15-11.)

The Court finds that Dr. Vellman is qualified to provide expert opinion testimony, and that his proposed expert testimony is reliable.  Therefore, the Court here denies in part Plaintiffs' 702 Motion with regard to Dr. Vellman's testimony.  As with Defendant's other expert witnesses, Dr. Vellman will be subject to the limitation regarding providing opinion testimony on the standard of care of Mrs. Watkins' treatment at Highlands and Parker Adventist, as more fully detailed below.

### D.    Dr. Eugene Mark Eby

Plaintiffs' 702 Motion challenges the reliability of Dr. Eby's testimony.  Plaintiffs point out that Dr. Eby was endorsed to testify consistent with facts and opinions set forth in his expected deposition.  However, Dr. Eby's deposition was not taken.  (ECF No. 231 at 13.)  Plaintiffs contest Dr. Eby's expert testimony because his disclosure is devoid of any statement of facts, data, or information with which to determine the reliability of his testimony.  (*Id.* at 14.)

During the 702 Motion Hearing Defendant represented to the Court that Dr. Eby would be providing fact testimony at trial, and would no longer be proffered as an expert to provide opinion testimony pursuant to Rule 702.  (702 Tr. at 14:41:38.)  Thus, the Court hereby grants Plaintiffs' 702 Motion with regard to Dr. Eby providing any expert opinion testimony.  Dr. Eby will be precluded from testifying as an expert witness at trial.

### E.    Nancy Lynch, R.N.

Plaintiffs' 702 Motion challenges whether Nurse Lynch's opinions will assist the jury in determining a fact in issue.  Plaintiffs argue that Defendant did not disclose which

opinions it intends to elicit from Nurse Lynch and the basis of those opinions.  (ECF No. 231 at 14.)

Nurse Lynch is a registered nurse, and is licensed to practice in the State of Colorado.  (702 Tr. at 13:18:56-13:19:04.)  In 2007, Nurse Lynch was director of nursing at Highlands, and is currently practicing at the Colorado Mental Health Institute at Fort Logan.  (*Id.* at 13:19:10- 13:19:24.)  Defendant offers Nurse Lynch to testify regarding rights of psychiatric patients with respect to the use of restraints, and how the use of restraints is determined.  (702 Tr. at 13:18:54-13:23:46.)  Further, Nurse Lynch is being offered to testify to facts in the case including Mrs. Watkins' prior history.  (ECF No. 238 at 14.)

Defendant argues Nurse Lynch will assist the jury in understanding the difficult balance between providing a safe environment and respecting a patient's rights.  (*Id.*)  During the 702 Motion Hearing, Nurse Lynch testified to her experience regarding transfer orders and their origin with physicians.  (702 Tr. at 13:36:16-13:36:26.)  Nurse Lynch explained to the Court what a transfer order asking for basic life support would entail, *id.* at 13:36:58-13:37:42, and testified regarding a plan that Mrs. Watkins likely developed at Highlands for her own understanding of her disease and treatment, *id.* at 13:38:06-13:39:58, 13:42:50-13:43:16.

Based on Nurse Lynch's experience and her testimony during the 702 Motion Hearing, the Court finds that Nurse Lynch is qualified to provide expert opinion testimony regarding the rights of psychiatric patients with respect to the use of restraints and how the use of restraints is determined, and that this proposed expert testimony is reliable. Therefore, the Court here denies in part Plaintiffs' 702 Motion with regard to Nurse

Lynch's testimony.  Nurse Lynch will, however, be subject to the limitation regarding providing opinion testimony on the standard of care of Mrs. Watkins' treatment at Highlands and Parker Adventist, as more fully detailed below.

## III.   LIMITATION ON ALL EXPERT WITNESSES

The issue in this case is whether Action Care acted below the standard of care in the transport of Mrs. Watkins given the information that it had at the time of transport. An overarching argument by Plaintiffs in their 702 Motion and during the 702 Motion Hearing was that expert opinion testimony regarding the standard of care of Mrs. Watkins' treatment at Highlands and Parker Adventist is not relevant to the issues in this case and will not assist the jury.

The Federal Rules of Evidence provide a guideline for determining relevance. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  However, "[e]vidence which is not relevant is not admissible."  Fed. R. Evid. 402.  The consideration of relevant evidence is one of "fit" or "the logical relationship between the evidence proffered and the material issue that evidence is supposed to support to determine if it advances the purpose of aiding the trier of fact."  *Bitler v. A.O. Smith Corp.*, 391 F.3d 1114, 1121 (10th Cir. 2004).

Here, the Court finds that while facts regarding Mrs. Watkins' treatment at Parker Adventist may be relevant to the standard of care provided at the time of transport, expert opinion testimony regarding the standard of care of treatment received by the decedent at Highlands and Parker Adventist is not relevant.  On March 23, 2011, the Court ruled that

Defendant could not establish a *prima facie* case of negligence sufficient to designate Highlands as a non-party at fault.  (ECF No. 215.)  Thus, the standard of care of Mrs. Watkins' treatment at Highlands is not relevant to this case.

Additionally, on April 10, 2009, Defendant withdrew its designation of Parker Adventist as a non-party at fault.  (ECF No. 97.)  In so doing, Defendant conceded that Parker Adventist has no liability for the tragic events of this case .  Thus, the standard of care of Mrs. Watkins' treatment at Parker Adventist is also not relevant to this case. Accordingly, the Court precludes all expert opinion testimony regarding the standard of care of Mrs. Watkins' treatment at Highlands and Parker Adventist.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Plaintiffs' 702 Motion, ECF No. 231, is GRANTED in part and DENIED in part as follows:

1)      Plaintiffs' 702 Motion with regard to Fed. R. Civ. P. 26 is DENIED.  The Court hereby applies the pre-December 1, 2010 version of Rule 26 to Defendant's non-retained expert disclosures;

2)      Plaintiffs' 702 Motion with regard to Dr. Miller's testimony is GRANTED. Dr. Miller will not be permitted to provide expert testimony regarding the standard of care of an EMT, a paramedic, or an ambulance transport;

3)      Plaintiffs' 702 Motion with regard to Dr. Jobin's testimony is GRANTED. Dr. Jobin will not be permitted to provide expert testimony regarding psychiatric medicine or Mrs. Watkins' employability;

4)      Plaintiffs' 702 Motion with regard to Dr. Vellman's testimony is DENIED;

5)      Plaintiffs' 702 Motion with regard to Dr. Eby is GRANTED.  Dr. Eby will not

be permitted to provide any expert opinion testimony at trial; and

6)      Plaintiffs' 702 Motion with regard to Nurse Lynch's testimony is DENIED.

It is further ORDERED that all expert witnesses are precluded from providing

expert opinion testimony regarding the standard of care of Mrs. Watkins' treatment at

Highlands and Parker Adventist.


Dated this 9th day of September, 2011.

BY THE COURT:

William J. Martinez
United States District Judge